## SECOND DISTRICT, DECEMBER, 1892.

THE TEXAS WATER AND GAS COMPANY, FOR USE OF T. R. BONNER
ET AL. V. THE CITY OF CLEBURNE.

No. 24.

1. **Municipal Bonds—Signature of Former Mayor.**—While H. was mayor thereof, a city contracted to issue certain bonds, and the bonds were engraved and printed, but before their signature and delivery H. had ceased to be mayor. The city council, however, by resolution authorized him to sign the bonds as mayor, which he thereupon did. *It seems* that the bonds thus signed are worthless, and an action can not be maintained thereon.

2. **Pleading—Averment of Authority of a City to Issue Bonds.** Where a city is sued on a contract such as could have been lawfully made only by a city of over 10,000 inhabitants, the plaintiff's petition is bad on special exception if it fails to allege that the defendant is incorporated as a city of over 10,000 inhabitants.

3. **Municipal Taxation—Water Works—City of 10,000 or Less.** Prior to the constitutional amendment of 1883 a city of 10,000 or less had not the power to levy an annual tax exceeding one-fourth of 1 per cent, except for the payment of debts already incurred, and for the erection of public buildings. A system of water works does not come within either of these two matters.

4. **Amendment to Constitution Takes Effect, when.**—An amendment to the Constitution does not become operative until after the lapse of forty days from the date of the election at which such amendment is adopted.

5. **Municipal Power—Ratification by City of Unauthorized Contract—Pleading.**—It is essential that the mode prescribed by law in regard to municipal contracts be followed in the ratification as well as in the making of the contract; and therefore where a city attempted to make a contract which it then has not legal power to make, if it be sought to hold the city liable thereon by virtue of a ratification made after the grant of enlarged power to the city, the pleadings must specifically show that at the time of the ratification the city then had authority to have made the contract, and that the ratification includes all conditions made by statute or organic law necessary to the existence of the contract, such as the condition that a city shall not create a debt without making at the same time provision for its payment, principal and interest.

6. **Limitation of Two Years on Implied Contract by City.**—The implied liability to pay for the water works would exist, if at all, from the time that they were first accepted and appropriated by the city, and the cause of action on such liability would be barred in two years.

7. **Two Years Possession a Bar, when.**—If a system of water works is to be regarded as personal property, and the city has taken exclusive charge of them and owned and operated them as its own property for more than two years prior to the filing of a suit to recover them, the statute of two years applies, and the bar is complete against such demand.

8. **Municipal Authority—Water Works as Realty.**—If water works of a city are to be considered as part of the realty because attached as fixtures

to the freehold, then as such realty is necessarily held and owned by the city for public use, it can not by contract lawfully surrender its control over such property to any individual or corporation; and a court will not, therefore, render a judgment against a city for the recovery of water works and control thereof.

APPEAL from Johnson. Tried below before Hon. J. M. HALL.

*W. S. Herndon* and *B. B. Cain*, for appellant.—1. The contract sued upon is one which the city had a right to make, and on general demurrer, if the law authorized it, the courts will enforce it. Every reasonable intendment arising upon the petition will be indulged in favor of its sufficiency. The contract is for construction of a system of water works, and is properly executed. It can not be presumed that the city had less than 10,000 inhabitants, or that the bonds contracted to be issued would be excessive. Such defenses are matters of fact to be pleaded by the defendant. Rev. Stats., arts. 374, 420; Const., sec. 9, art. 8; Rule 17, 47 Texas, 619; Prewitt v. Farris, 5 Texas, 371; Burks v. Watson, 48 Texas, 107; Johnson v. Dowling, 1 Ct. App. C. C., sec. 1094.

2. Although the city of Cleburne issued bonds in a manner not authorized by law, and no recovery could be had on the bonds per se, yet if the money derived therefrom, or in its stead the water works, was a purpose authorized by law, an action lies as for money had and received, and the bona fide holder of said bonds could recover as assignee of the original demand. Louisana v. Ward, 102 U. S., 294; Gauze v. City, 1 Fed. Rep., 357; Marsh v. Fulton, 10 Wall., 676; Burr on Pub. Secur., 508, et seq.; Porter v. Bright, 82 Pa. St., 421.

3. The question to be determined is whether or not such a contract is authorized. If it is in furtherance of some legitimate corporate purpose, the city is estopped from denying its liability on such contract. Herm. on Estop., sec. 1183; 14 Pet., 122; 12 Wall., 358; 107 U. S., 174, 676; 98 U. S., 621; Warner v. Munsheimer & Co., 2 Ct. App. C. C., sec. 393; Grande v. Chaves, 15 Texas, 550.

4. The doctrine of implied liability applies to a city where property is received or obtained by mistake or without authority of law. It is its duty to restore such property, not from contract entered into by it, but from the general obligation to do justice, which binds all persons, whether natural or artificial. If this property has not been converted or used, it is the duty of the city to restore it, or if used, to render its equivalent to the true owner. Augusta v. San Francisco, 16 Cal., 255; Gas Co. v. San Francisco, 9 Cal., 453; Alleghany City v. McClarker & Co., 14 Pa. St., 81; Dill. on Mun. Corp., secs. 384, 750; Nelson v. Mayor, 63 N. Y., 536.

5. No action accrued to these bondholders under their contract until the validity of these bonds was determined by the courts and it became

res adjudicata. Therefore the action on quantum meruit is not barred. Wood on Lim., sec. 143; Ripley v. Withee, 27 Texas, 14.

6. If the statute does apply to the actions on quantum meruit and for specific performance, the action for possession of the property is not barred, because the possession by defendant has not been of such an adverse nature as would set the statute in motion. When adverse possession is claimed, the whole inquiry is into the quo animo or intent with which it is taken and held. As long as there was not some unequivocal act indicating an intention to acquire title without payment to this appellant, and no intention to do so on the part of appellee, the statute is motionless and can not be pleaded as a defense. Ang. on Lim., sec. 386; 5 Pet., 440; 11 Pet., 41; University v. McCune, 28 Mo., 481; Howard v. Reedy, 29 Ga., 152; Perkins v. Blood, 36 Vt., 273; Richard v. Neghlangate, 9 Allen, 149.

7. Under the circumstances of this case, equity will excuse the delay in bringing this suit. Kirma v. Smith, 3 N. J. Eq., 14; Preston v. Preston, 95 U. S., 200; Neeley's Appeal, 85 Pa. St., 387; Reed v. West, 47 Texas, 240; Rogan v. Walker, 1 Wise, 631; Lawrence v. Raker, 61 Me., 38; McKnight v. Taylor, 1 How., 161.

*Crane & Ramsey, F. A. Fisher,* and *D. T. Bledsoe,* for appellee.—
1. The contract sued upon is not one which the city had a right to make, but it is absolutely void, because the Constitution of the State, as it existed at the time said contract was made, prohibited cities of the class to which appellee belongs from levying or collecting any tax for the purpose mentioned in said contract. Const., sec. 4, art. 11; Const. (original), sec. 9, art. 8; Rev. Stats., art. 427; Gould v. Paris, 68 Texas, 511; Waxahachie v. Brown, 67 Texas, 520; Voorheis v. Mayor, 70 Texas, 339; Terrell v. Dessaint, 71 Texas, 770.

2. The contract is to be construed and the rights of the parties tested by the law in force at the time the contract was made, and the amendment of 1883 to section 9, article 8, of the Constitution, which did not take effect until after the contract was made, can not be considered as enlarging or extending the powers of the city or the rights of appellants thereunder. Const., sec. 2, art. 17; Sewell v. The State, 15 Ct. App., 57; State v. Morgan City, 32 La. Ann., 81; People v. Norton, 59 Barb., 169; University v. McIver, 72 N. C., 76; Concord v. Portsmouth, 92 U. S., 629; Marsh v. Fulton, 77 U. S., 682; Concord v. Robinson, 121 U. S., 166.

3. The petition does not allege any facts in reference to population, taxable values, or indebtedness of the city of Cleburne at the time the contract was made, such as would show that the city had lawful authority to have made the contract and levied the necessary tax. Const., sec. 9, art. 8, sec. 4, art. 11; Rev. Stats., arts. 420, 421, 424, 425, 427; Sayles'

Civ. Stats., art. 1187, and note 4; Gould v. Paris, 68 Texas, 511; Waxahachie v. Brown, 67 Texas, 520; Dill. on Mun. Corp., secs. 509, 493; Bank v. St. Joseph, 31 Fed. Rep., 216; Henry County v. Winnebago, 52 Ill., 310; Bell v. Johns, 111 Ill., 379.

4. It not being shown that the city of Cleburne has the power to levy and collect the tax to pay the debt attempted to be created, the contract is void, and the city incurred no liability for work done under a void contract, nor was there guaranty on its part that compensation shall be made, because its officers, without authority, have attempted to contract. Gould v. Paris, 68 Texas, 511; Bryan v. Page, 51 Texas, 532; Ins. Co. v. Middleport, 124 U. S., 534–551; Litchfield v. Ballou, 114 U. S., 132; Daley v. San Francisco, 13 Pac. Rep., 321; Ottawa v. Cony, 108 U. S., 110; Parkersburg v. Brown, 106 U. S., 487; Anthony v. Jasper County, 101 U. S., 696; Concord v. Robinson, 121 U. S., 166; Terrell v. Dessaint, 71 Texas, 770.

5. The contract being void, because the city had no power to create the debt, there can be no implied liability arising out of or based upon such void transaction. Gould v. Paris, 68 Texas, 511; Bryan v. Page, 51 Texas, 532; Litchfield v. Ballou, 114 U. S., 132; Ins. Co. v. Middleport, 124 U. S., 534; Daily v. San Francisco, 13 Pac. Rep., 321; Buchanan v. Litchfield, 102 U. S., 278; Otis v. Cullum, 92 U. S., 47.

6. The statute of limitations, as pleaded by appellee in the sixth, seventh, and eighth special exceptions to plaintiff's petition, is a complete bar to any cause of action which either Bonner, Henderson, and Williams, or the Texas Water and Gas Company, may have ever had against appellee. Sayles' Civ. Stats., arts. 3203, 3204, and notes; Gould v. Paris, 68 Texas, 511; Water Works v. Kennedy, 70 Texas, 234; Connor v. Hawkins, 71 Texas, 582.

7. The law will not permit appellee to loan its credit, nor to surrender its authority or control over the streets and highways or any other property held and owned by the city for public use; and the court will not, by judgment or decree, compel the city to do any act which it can not lawfully do by contract. Macdonell v. Railway, 60 Texas, 590; Cleburne v. Brown, 73 Texas, 443.

TARLTON, CHIEF JUSTICE. — This suit was brought, November 8, 1889, in the District Court of Johnson County, by the Texas Water and Gas Company, for the use of T. R. Bonner, E. C. Williams, and J. B. Henderson, against the city of Cleburne. The plaintiff prays as follows:

1. For a decree specifically enforcing a certain contract, by which the appellee agreed to issue and deliver fifty-one good and valid bonds of $1000 each, in payment for certain water works constructed for appellee by appellant, and for interest which has accrued upon said contract since

its completion by appellant, and for a writ of mandamus to enforce such decree.

2. For the recovery of the value of said water works, alleged to be the sum of $51,000, in the event that the court should refuse specific performance.

3. For the recovery of the water works themselves, together with all the rents, issues, and profits, and the right to operate the same as now located in the city of Cleburne, in the event that the court should refuse to decree specific performance or to give judgment for the value of the water works.

The facts relied upon by appellant for recovery, as alleged in its petition, are as follows: On September 13, 1883, the city of Cleburne adopted an ordinance authorizing its mayor and city secretary to execute a contract with appellant for the construction of a system of water works, and on compliance by appellant with its contract, to execute and deliver to it fifty-one bonds for $1000 each, due twenty years after date, with forty coupons, for $35 each, attached to each bond, the coupons falling due semi-annually, the last maturing July 1, 1905.

The ordinance provided that the revenues realized from the operation of the water works, over and above the expenditures, should constitute a fund to pay the interest and create a sinking fund for the final redemption of the bonds. It further ordained, for the purpose of paying said interest, the levy of an annual tax of one-fourth of 1 per cent on each $100 worth of property in the city; and it further ordained, in order to pay said interest and to provide a sinking fund for the redemption of the bonds, the levy of an additional tax of one-tenth of 1 per cent, to be collected under the power of the city "to levy and collect annual taxes to defray the current expenses of the local government." This levy of one-tenth of 1 per cent was to be inoperative if it should be found that the preceding levy would be sufficient to pay the interest and sinking fund referred to.

On September 13, 1883, the city of Cleburne, through its mayor, W. N. Hodge, and its city secretary, W. H. Graves, under the authority of said ordinance, entered into a contract with appellant. On the part of the Texas Water and Gas Company it was agreed to construct, on or before June 1, 1884, a complete system of water works, to be submitted to a prescribed test in the presence of a committee of aldermen of the city, on a favorable report from which the company was to be discharged from further obligation on the contract. On the part of the city it was agreed to deliver to the Texas Water and Gas Company, on its compliance with the conditions named, the bonds and coupons described in the ordinance.

In pursuance of its contract, the company completed the water works by July 3, 1884, and submitted them to the test provided for; they were

accepted by the city, which, in the language of the petition, "took charge of them, and has ever since owned, held, and operated them as its own property and for its own use, benefit, and profit."

On July 3, 1884, W. N. Hodge, as mayor, with the attestation of W. H. Graves, as' city secretary of the city of Cleburne, delivered to the company the fifty-one bonds, together with the coupons, provided for in the contract and the ordinance. These bonds bear date January 1, 1884; they are endorsed "Registered on July 12, 1884. William J. Swain, Comptroller." Each bond contains the recital that it is "authorized by article 420, Revised Statutes of Texas, and by the ordinance already set out in conformity to article 420." Each also recites that it is secured by an ordinance of the city authorizing the levy and collection of a tax of 35 cents on the $100 worth of property, to pay the interest and 2 per cent sinking fund.

The purported date of these bonds, January 1, 1884, is not their true date. They were actually signed July 3, 1884, when W. N. Hodge had ceased to be mayor. From the fact, however, that the bonds were issued under the contract of September 13, 1883, and were printed and engraved prior to the date, January 1, 1884, when Hodge was the mayor, the city council adopted a resolution authorizing W. N. Hodge to sign the bonds as mayor. By virtue of this resolution, W. N. Hodge signed the bonds as mayor, and they were delivered to the company and accepted by it as valid bonds in payment of the $51,000 stipulated for by the contract. After its acceptance of the bonds, the plaintiff sold all of them to the parties for whose use this suit is brought, and received for them the money therefor. These parties are now the bona fide owners and holders of thirty-three of the bonds, with all the coupons attached thereto, which represent the interest beginning and running from July 1, 1884, and maturing semi-annually on the first days of January and July.

In the latter part of the year 1884, certain coupons first maturing were cut and sold to W. N. Coler, Jr., a nonresident, who, payment being refused, brought suit in May, 1885, against the city of Cleburne in the Circuit Court of the United States for the Northern District of Texas, to enforce the payment of the coupons. The suit so brought, No. 759, resulted, in February, 1887, in a verdict in favor of the defendant, on the ground that the bonds were not properly executed and that the coupons were void. From this judgment W. N. Coler, Jr., prosecuted an appeal to the Supreme Court of the United States, which, on May 13, 1889, affirmed the judgment of the Circuit Court, holding the bonds to be void, because they were signed by W. N. Hodge as mayor, when in fact he was but a private citizen.

The plaintiff has in all things complied with its contract; it has completed the water works, which the defendant has accepted, used, and operated. The defendant has not paid the consideration of $51,000, ac-

cording to the contract; it has not delivered fifty-one valid bonds, but it has issued fifty-one worthless bonds, which the plaintiff holds for the use of the parties named in this suit, and which, together with the coupons, plaintiff is ready to deliver up for cancellation. The defendant has paid no consideration for the water works, but has refused the demand of the plaintiff, made in the name and for the use of all the holders of the bonds, to execute and deliver fifty-one good and valid bonds according to its agreement.

The defendant city addressed to the petition a general demurrer and divers special exceptions, all of which were sustained. The action of the court in sustaining this demurrer and these exceptions gives rise to the questions which we shall proceed to consider.

1. Was the city of Cleburne empowered, under the Constitution and laws of the State, to enter into the contract set out in the plaintiff's petition? If it was not so authorized, the plaintiff is not entitled to the decree for specific performance for which it prays. If Cleburne was a city of more than 10,000 inhabitants, this question would require an answer in the affirmative, because cities of the latter class, at the date of this contract, were empowered, for municipal purposes, including the purpose of protection against fire, here in contemplation, to levy a tax of $2\frac{1}{2}$ per cent, a limit far in excess of that named in the contract under consideration. Muller v. City of Denison, ante, 293.

The petition contains no averment that Cleburne is such a city, and the failure to so aver is the subject of appellee's twelfth special exception. As the purpose of the suit is to enforce the performance of a contract by the city, it would devolve upon appellant to prove that Cleburne was a city such as could enter into the contract in question. Gould v. City of Paris, 68 Texas, 518. Such proof would require corresponding allegations, and in their absence the petition would be obnoxious, at least to special exception such as was addressed to it. The appellant urges that the court erred in sustaining the general demurrer to its petition in this respect, and invokes the doctrine that on general demurrer every reasonable intendment will be indulged in favor of the sufficiency of the petition. As, however, in connection with the general demurrer, the court acted upon the special exception referred to, and as the latter was properly sustained, we do not think that the principle of pleading invoked by appellant is applicable.

We are therefore to measure the authority of the city of Cleburne by the powers delegated to it as a city of 10,000 inhabitants or less, and, in this connection, to look to the constitutional and legislative provisions, the sole source of these powers. Article 420 of the Revised Statutes is the legislative authority relied upon to support the contract and the ordinance declared upon. The appellee contends that the constitutional provisions determining the authority of Cleburne were section 4, article 11,

and section 9, article 8, of the Constitution of 1876, as it existed prior to the amendment of 1883; the appellant contends, on the other hand, that such authority is to be fixed by reference to these provisions of the Constitution as they existed after the amendment of 1883, enlarging the powers conferred upon municipalities in section 9, article 8.

Construing article 420 of the Revised Statutes and the two sections referred to of the Constitution as it existed previous to the amendment of 1883, Willie, Chief Justice, in Gould v. City of Paris, 68 Texas, 518, concluded, in effect, that a city having 10,000 inhabitants or less had not the power to levy an annual tax exceeding one-fourth of 1 per cent, " except for the payment of debts already incurred, and for the erection of public buildings." Excluding these excepted purposes, the power of the city ceased with the levy of one-fourth of 1 per cent for current expenses. As the construction of a system of water works comes neither within the description " debts previously incurred," nor " erection of public buildings," it follows, if the petition in this case shows that the taxes contemplated by the contract are in excess of the one-fourth of 1 per cent allowed for " current expenses," and if the Constitution as it existed prior to the amendment of 1883 was in force, that the contract sued upon was void.

The power of the city to contract can not extend beyond the power of the city to tax. Gould v. City of Paris, 68 Texas, 516. The ordinance and the contract in question, as shown by the allegations of the petition, provided, first, for an absolute levy of one-fourth of 1 per cent, and, additionally, for a conditional levy of one-tenth of 1 per cent, the latter to be collected under the power to levy a tax to defray current expenses. It thus appears that the levy of one-fourth of 1 per cent was independent of the power to levy a tax for current expenses, and in excess of it, and that the levy of one-tenth of 1 per cent was contingent upon the levy of one-fourth of 1 per cent. Hence, we conclude that the tax provided for was unauthorized, and the contract was void, unless at the date thereof the Constitution as amended was in force. Under article 8, section 9, as amended, cities of the class of Cleburne were authorized, without reference to the tax for current expenses, to levy a tax not exceeding " 25 cents on the $100, for the erection of public buildings, streets, sewers, and other public improvements;" the term " public improvements," including, as we think, such improvements as a system of water works. We will therefore consider the proposition of appellant, that the constitutional amendment was operative at the date of the contract alleged.

The amendment in question was submitted by the Legislature April 7, 1883; it was ratified by vote August 14, 1883, and the result of the election in favor of its adoption was announced in the Governor's proclamation September 25, 1883. The contract in question was entered into

September 13, 1883. Article 17, section 1, of the Constitution, requires, when a vote has been had on the question of adopting a constitutional amendment, that the several returning officers shall make returns to the Secretary of State, whose duty it becomes (under article 1710, Revised Statutes), to count the returns of the election on the fortieth day after the election, and not before, excluding the day thereof. "And if it shall appear from said returns that a majority of the votes cast have been cast in favor of any amendment, the said amendment so receiving a majority of the votes shall become a part of this Constitution, and proclamation shall be made by the Governor thereof." Article 17, as a part of the Constitution itself, must be deemed the expression of the people as to when their will, with reference to a change in the organic law, shall take effect. Its purpose, evidently, was to avoid that confusion which would probably result from too sudden a change in the frame of government, and which is naturally incident to the going out of the old order and the coming in of the new. Our Court of Appeals has, therefore, correctly held that the constitutional amendment does not become operative until after the lapse of the forty days above referred to. Sewell v. The State, 15 Texas Ct. App., 56; Wilson v. The State, 15 Texas Ct. App., 150; see also Real v. The People, 42 N. Y., 270.

The rights, powers, and duties of the city of Cleburne under the contract are consequently to be considered without regard to the amendment of 1883.

Appellant insists, however, that "the acts of performance (stated in the petition) are in themselves the creation of a contract, or such a ratification of the original as declare it a contract made after the amendment became a law." These acts are as follows:

(1) After the completion of the water works, in July, 1884, they were submitted to a test to prove their efficiency, in accordance with the terms of the contract, and they were accepted by the city, which "took charge of them and has ever since held, owned, and operated them as its own property, and for its use, benefit, and profit."

(2) At said date, in July, 1884, the city council adopted a resolution empowering W. N. Hodge, as mayor, to sign the bonds provided for in the contract of September 13, 1883.

As already stated, the authority under which it is claimed that this contract was made is contained in article 420 of the Revised Statutes. This article empowers the city to issue coupon bonds for the purpose of erecting water works; "provided, that the aggregate amount of bonds shall not at any time exceed 6 per cent of the value of the property within said city subject to an 'ad valorem' tax." It is further provided in article 427 of the Revised Statutes, that "No debt shall ever be created by any city unless at the same time provision be made to assess and collect annually a sufficient sum to pay the annual interest thereon and

create a sinking fund to pay 2 per cent thereon." These are conditions upon which the power exists to issue the bonds or contract the indebtedness. City of Terrell v. Dessaint, 71 Texas, 770. The petition nowhere shows the value of the property within the city of Cleburne, nor is it alleged in connection with the foregoing facts that any provision was made to pay the debt in contemplation. The appellee, in its twelfth special exception, assails the petition as insufficient, because it does not allege any facts which would have authorized the defendant to create the indebtedness at the time of making the contract, or passing the ordinance, or issuing the bonds, or of the attempted creation of the indebtedness.

Where one seeks to enforce an executory contract against a city, he must show that the contract is authorized by the statute, and where the existence of conditions is made, by statutory or organic law, necessary to the execution of the contract, he must aver such existence. A general allegation of authority is insufficient. Dill. on Mun. Corp., sec. 509. It is essential that the mode prescribed by law in regard to municipal contracts be followed as well in the ratification as in the creation of the contract. 15 Am. and Eng. Encyc. of Law, 1086. The acts referred to under the deficient allegations of the petition are therefore certainly insufficient to create or ratify the contract.

2. The second prayer of appellant's petition invites a discussion of the following question: Does the petition show that the city is bound by an implied contract for the value of the water works? We do not, however, deem it necessary to discuss this question. If we grant that the facts alleged show an implied obligation, we are nevertheless constrained to sustain the defense of limitation urged by special exception to the demand. Bonner, Williams, and Henderson, for whose use this suit is brought, occupy an attitude certainly not more advantageous than the Texas Water and Gas Company, through which their rights arise. The implied liability to pay for the water works would exist, if at all, from the time that they were first accepted and appropriated by the city; and the cause of action upon such liability would be barred in two years. Gould v. Paris, 68 Texas, 511. The petition, therefore, showing that more than two years had elapsed after the accrual of the cause of action and before the bringing of this suit, the bar is complete.

3. We finally consider the question whether, under the facts stated in the petition, appellant is entitled to recover the water works themselves? To this demand the city, by special exception, also interposes the defense of limitation. As already stated, the petition alleges, in effect, that on the 3d day of July, 1884, more than five years before the institution of this suit, the water works were accepted by the city, and "the city took charge of them and has ever since held, owned, and operated them as its own property, and for its own use, benefit, and profit." The possession thus indicated was "hostile, actual, visible, notorious, and exclusive,

continuous, and under a claim of title." All the elements of adverse possession coexist. 1 Am. and Eng. Encyc. of Law, 228. If, therefore, the water works are to be regarded as personal property, the statute of two years applies, and the bar is complete against this demand. Connor v. Hawkins, 71 Texas, 582. ,

If, on the other hand, as appellant strenuously insists, the water works are to be considered a part of the realty, because attached as fixtures to the freehold, what is the consequence? The realty to which they are so attached, and of which they are become a part, was and is necessarily held and owned by the city for public use. The city council could not, by contract, surrender its control over such property to any individual or corporation. Macdonell v. Railway, 60 Texas, 590. A judgment, therefore, compelling it to do that which by contract it was not authorized to do, or that which by law it is forbidden to do, could not be justified.

In conclusion, we are of opinion that if the facts stated in the petition could entitle the plaintiff to any relief, it would be solely by virtue of an implied contract; and that, as the cause of action founded upon the implied contract, if it existed (which we do not decide), is clearly barred by the statute of limitation of two years, the judgment must be affirmed.

It is consequently so ordered.

*Affirmed.*

Delivered December 6, 1892.